293 So.2d 345 (1974)
STATE of Florida ex rel. Arthur Eugene MANUCY, Petitioner,
v.
The Honorable W.L. WADSWORTH, As One of the Judges of the Circuit Court of the Seventh Judicial Circuit, in and for St. Johns County, Florida, Respondent.
STATE of Florida, Plaintiff,
v.
Wilbur Estell BARBER and Huey Leroy Fullard, Defendants.
Nos. 43042 and 43087.
Supreme Court of Florida.
April 1, 1974.
Rehearings Denied May 14, 1974.
Dawson, Galant, Maddox, Boyer & Sulik, Jacksonville, for petitioner.
Robert L. Shevin, Atty. Gen., and Reeves Bowen, Asst. Atty. Gen., for respondent and plaintiff.
Albert J. Datz of Datz, Jacobson & Dusek, Jacksonville, for defendants.
*346 PER CURIAM.
The opinion heretofore filed is revised and the petition for rehearing is visited to the revised opinion and denied.
These consolidated cases are before us on a petition for writ of prohibition and return thereto (Manucy) and petition for certification of question[1] (Barber and Fullard). The cases have in common the question of the application and operation of the Statute of Limitations governing prosecution for non-capital offenses, offenses which were formerly classified as "capital."
The facts in the Manucy case are that the petitioner was charged by affidavit on September 7, 1972, before the County Judge's Court of St. Johns County with the first degree murder of one Floyd Boatwright. The alleged offense occurred some four years prior, on or about October 24, 1968. A warrant for petitioner's arrest was issued on September 7, 1972, and petitioner was arrested pursuant to that warrant on September 9, 1972.
On October 17, 1972, the State Attorney of the Seventh Judicial Circuit filed an information in the Circuit Court of St. Johns County charging the petitioner with first degree murder.
In the second case we find that on August 17, 1969, Wilbur Estell Barber allegedly hired Huey Leroy Fullard to kill Barber's wife. Fullard then allegedly killed another woman mistakenly thinking that she was the intended victim. Prosecution against the defendants was commenced by issuance of an arrest warrant on January 14, 1972, charging them with murder in the first degree. A grand jury indictment was filed and recorded on January 20, 1972.
A question raised in Manucy and that same question certified to this Court in Barber, arise as an incidental consequence of the decision in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).
In Florida, prior to the decision in Furman, capital crimes,[2] those punishable with death, could be prosecuted at any time subsequent to the alleged offense, whereas non-capital crimes, those not punishable with death,[3] had to be prosecuted within two years of the commission of the offense. (Fla. Stat. § 932.05 Limitation of Prosecutions [1969], now: § 932.465, F.S.A. With the rendition of the Furman decision on July 24, 1972, the classification of capital offenses was, in effect, abolished[4] subjecting all former capital crimes to prosecution within a two year period.[5] This situation remained in effect until our Legislature re-enacted a death penalty statute. Fla. Stat. § 921.141 (1972) which re-vitalized the classification of "capital crimes", effective October 1, 1972, as later amended by Laws of Florida Chapter 72-724, effective December 8, 1972.
Petitioner Manucy was arrested in the interim period (July 4, 1972 and October 1, 1972) when the classification of capital crimes had been abolished. He therefore claims that since the two year limitation period was in effect at the time of his arrest, prosecution for an alleged crime which occurred almost four years prior to *347 his arrest was barred by the limitation on the prosecution period. Petitioner Barber also contends that since his prosecution was commenced more than two years after the alleged incident, a further proceeding would be improper since the prosecution was barred by the limitation period. Petitioners therefore assert that the limitation statute should be given the status of procedure wherein the court looks to the limitation period in effect at the time of the arrest to determine whether the prosecution was timely instituted.
A review of the authorities indicates that the statute of limitations in force and effect at the time of the incident giving rise to the criminal charges is controlling in determining whether prosecution has been timely commenced.
Statutes of limitation in criminal prosecutions ("Limitation on Prosecution") are strictly creatures of statute; State v. Hickman, 189 So.2d 254 (Fla.App. 1966); and as such are considered as vesting a substantive right, rather than being a procedural matter.
"... Whenever, however, it so clearly appears that the time of the commission of the offense was so long ago as that the accused is protected from accusation by the statute of limitations, he may be awarded this right on habeas corpus. There is as much a denial of what we have called the first right of every accused person, by holding him to answer an offense for which he cannot be lawfully prosecuted, as there is for one wholly unsupported by proofs. Whether the question is properly raised by demurrer, by special plea, or by the general issue plea, makes no difference. The right of protection is not a mere procedural one, but is a substantive right."[6]
Therefore, the period of the statute begins to run from the time of the alleged criminal conduct. In United States v. Auto Rental Co., 187 F. Supp. 603, 605 (W.D.Pa. 1960), the criminal conduct arose out of the alleged illegal payments of money. There the Court held:
"... Of course, if all the money was paid prior to the 5-year period, the Statute of Limitations would bar prosecution. Protection from prosecution under a Statute of Limitations is a substantive right, and the actual date or dates of payment may be of vital importance to the defendants."
In Florida, it has been held that the time of the commission of the offense is the point at which the court commences to have jurisdiction for the computation of the limitation period.[7]
To hold otherwise might be to create a situation which is clearly unconstitutional. This could allow the Legislature to enlarge the statute of limitations until the criminal in question was tried and sentenced; clearly an application which is ex post facto.
In the cases before us, the crimes were both allegedly committed prior to the decision in Furman v. Georgia and therefore since the statutes of limitation are substantive,[8] the two year period to institute prosecution is not applicable. The certified question raised in the Barber and Fullard case is accordingly answered in the negative. Likewise in Manucy, the two year statute of limitations is not applicable to bar his prosecution.
The Manucy petition also raises the question of whether a person accused with *348 what was formerly a capital offense must be charged by indictment of a grand jury. In Donaldson v. Sack,[9] decided in the aforementioned interim period on July 17, 1972 (prior to the denial of rehearing in Furman), this Court did not speculate as to the necessity of an indictment for capital offenses after the effective date of the new death statute.
"... Such matter of bifurcated trials is not of concern and of course is not applicable at this point... .
"It therefore follows that until further legislation a grand jury can no longer indict for a `capital case' by that name because there is no `capital offense' for which they can do so."
The Court was obviously dealing with the procedure for commencing criminal actions during the interim period.[10] Subsequent to the effective date of Fla. Stat. § 921.141, F.S.A. (1972)[11] the definition of capital crimes was re-vitalized. The requirement of Fla. Const., Art. I, § 15, which commands that indictment in "capital cases" shall only be by indictment by a grand jury, was once again controlling.
In Manucy, petitioner was charged after the effective date of Fla. Stat. § 921.141, F.S.A. (1972) by information. This was clearly violative of the constitutionally guaranteed procedure for commencement of trials in "capital crimes". As to this issue, we therefore reverse and remand for further proceedings consistent with this view.
It is so ordered.
ADKINS, C.J., and ROBERTS, ERVIN, BOYD, McCAIN and CARLTON (Retired), JJ., concur.
NOTES
[1] "Can a defendant, against whom prosecution of the crime of first degree murder was commenced two years and five months after the commission of the crime, and which prosecution was commenced prior to the rendition of the decision of the Supreme Court of the United States abolishing capital offenses, now invoke the defense of the Statute of Limitations of two years applicable to non-capital offenses?"
[2] Adams v. State, 56 Fla. 1, 48 So. 219 (1908).
[3] Id.
[4] The Furman decision held the procedure for the imposition of the death penalty was unconstitutional. Since the definition of "capital" crimes in Florida is based upon those crimes which could be punished by death, the abolition of the procedure for imposition of the death penalty indirectly abolishes the term "capital crimes."
[5] Donaldson v. Sack, 265 So.2d 499 (Fla. 1972).
[6] United States v. Mathues, 27 F.2d 137 (E.D.Pa., 1928). See also United States v. Haramic, 125 F. Supp. 128, 129 (W.D.Pa. 1954).
[7] Mitchell v. State, 157 Fla. 121, 25 So.2d 73, 74 (1946).
[8] For an exhaustive review of the authorities supporting this holding see: State v. Garcia, 229 So.2d 236 (Fla. 1969); Concurring opinion of Justice Adkins in In re Florida Rules of Criminal Procedure, 272 So.2d 65 (Fla. 1972); State v. King, 282 So.2d 162 (Fla. 1973).
[9] 265 So.2d 499 (Fla. 1972).
[10] "The constitutional requirement for indictment for `capital crime' only by a grand jury does not mean that a person cannot now be indicted or informed against and thereupon tried for what has heretofore been delineated as a `capital crime'." Id. at 504.
[11] October 1, 1972. We are not unmindful of the subsequent amendment to Fla. Stat. § 921.141, F.S.A., Laws of Florida, Ch. 72-724, however this statute was not in effect at the time of filing of the information and Fla. Stat. § 921.141, F.S.A. as enacted, Laws of Florida, Chapter 72-72 was in effect.