332 So.2d 65 (1976)
Jon S. MILLER, a/k/a Robert Christopher, Appellant,
v.
STATE of Florida, Appellee.
No. 45689.
Supreme Court of Florida.
April 7, 1976.
Rehearing Denied June 11, 1976.
Robert T. Benton, II, Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., and Carolyn M. Snurkowski, Asst. Atty. Gen., for appellee.
PER CURIAM.
This cause is before us on direct appeal from a conviction of murder in the first degree and sentence of death imposed upon appellant by the Circuit Court in and for Lee County, Florida. We have jurisdiction pursuant to Article V, Section 3(b)(1).
Appellant was indicted for murder in the first degree in that he from premeditated design did stab Alexandra Todd to death. The murder was committed while defendant was in the act of robbing and raping the victim. The victim was stabbed nine times. Arraignment was continued until the defendant could be examined by two psychiatrists and order was entered by the trial court on March 3, 1971, requiring that defendant be examined by Drs. Hoagland and Schlit. On March 23, 1971, after hearing, the trial court determined that defendant was incompetent to stand trial and *66 ordered that he be confined to Florida State Hospital. On August 23, 1973, psychiatrists at Chattahoochee, by letter, notified the trial judge that it was the staff's opinion that defendant was competent to stand trial and should be returned to the committing court. The trial judge by order dated August 22, 1973, ordered that defendant be released into the custody of the Sheriff of Lee County for purpose of trial on the offense charged and by order dated September 18, 1973, required that defendant be re-examined to determine whether he was competent to stand trial. After hearing held December 14, 1973, the trial court found appellant competent to stand trial. On December 17, 1973, appellant filed a notice of intent to rely upon the defense of insanity. Trial by jury commencing February 19, 1974, resulted in a jury verdict of guilty as charged. After a sentencing hearing, the jury recommended that defendant be sentenced to death. Prior to imposing sentence the trial court entered an "Order to Examine," directing two named psychiatrists to examine defendant as to his contacts with reality, his intellectual ability, his rationality and memory, to determine whether or not he was competent to be sentenced. The psychiatrists agreed that appellant was sane and so notified the trial judge. The trial judge adjudicated defendant guilty of first degree murder and sentenced him to death. In his sentencing statement, the trial judge found as follows:
"A. As trial Judge, I find that the murder of Alexandra Todd (the woman taxi driver) was committed by the Defendant, JON STEVEN MILLER a/k/a ROBERT CHRISTOPHER, while the said Defendant was in the act of robbing and raping the victim, according to the Defendant's own testimony, he, the said Defendant, committed the crime of rape upon the victim, Alexandra Todd, either before she died, or after she had expired.
"B. That the convicted Defendant committed the crime upon the victim in a most heinous, atrocious and cruel manner by stabbing the victim with a very deadly knife that he had purchased just prior to the murder.
"C. That the capital murder of the victim was committed for pecuniary gain, the robbery of the victim.
"There is evidence in the record that the convicted Defendant was involved in some trouble and was sentenced to serve time in another prison system of another State, however, as trial Judge, I felt that this was not sufficient to come into play under Section (5) of 941.141 [921.141], F.S.A.
MITIGATING CIRCUMSTANCES
"A. After a careful examination of all the mitigating circumstances enumerated in Section (6) of 941.141 [921.141], F.S.A., I do find that there may have been, remotely, one which would apply.
"However, after presiding over and carefully studying the testimony and reports of the several doctors who had this Defendant in charge, especially the testimony of Mordecai Haber, M.D.F.A.P.A., a very eminent doctor, I come to the conclusion that the Defendant, to use the words of the doctor, `Presented no distortion of and was in good contact with reality, exhibited no intellectual incapacity, was able to reason, and his memory was not impaired.'
"The Defendant demonstrated this when he testified and later when I, as trial Judge, permitted him to address the jury at the close of the trial in his own behalf.
"I am forced to arrive at the decision that the mitigating circumstances do not in the least consequence outweigh the aggravating circumstances and the advisory sentence of death found and presented by the jury should be meted out to the Defendant, JON STEVEN MILLER, a/k/a ROBERT CHRISTOPHER.
"The Defendant was asked why he used the names Marlowe and Christopher. *67 It developed that he, the Defendant, was at one time a playwright. It may well be that he assumed the names Christopher and Marlowe because he was knowledgable with the contemporaries of the famous Shakespeare in English literature; and who wrote plays of tragedy, which always ended in violent death by stabbing."
Appellant initially contends that he should have been discharged pursuant to Rule 3.191(d)(3). However, the State responds that not only was appellant afforded a speedy trial under the rule but his trial was held well within the time requirements of Fla.Cr.R.P. 3.191.

 December 22, 1970 Arrest of Appellant
 March 3, 1971 At defense counsel's request,
 trial court ordered arraignment continued until psychiatric
 examination.
 March 23, 1971 Trial judge ruled appellant
 was not competent to stand trial and should be
 confined to state hospital.
 August 2, 1973 Staff at Florida State Hospital
 advised trial judge that appellant was now competent
 to stand trial.
 August 22, 1973 Order requiring return of appellant
 to Sheriff's custody.
 September 18, 1973 Order of re-examination to
 determine competency to stand trial.
 December 14, 1973 Order appellant competent to
 stand trial.
 February 19, 1974 Trial by jury.
 February 23, 1974 Conviction.

Rule 3.191(d)(2), Fla.Cr.R.P. provides:
"... A period of reasonable and necessary delay resulting from proceedings including but not limited to an examination and hearing to determine the mental competency or physical ability of the defendant to stand trial."
We agree with the State's argument that the order placing appellant in the custody of Florida State Hospital tolled the further running of the Speedy Trial time; that pursuant to Rule 3.210(a)(3), trial judge was notified and returned appellant to State penal system August 22, 1973, and pursuant to Rule 3.210, the judge conducted a competency hearing; that from December 14, 1973, 65 days passed. This is clearly within Rule 3.191. See State ex rel. Butler v. Cullen, 253 So.2d 861 (Fla. 1971). The State further argues that defendant exercised his right to defense of insanity to stand trial and upon initiating this defense, he was duty bound to follow proper procedure (Rule 3.210).
We find that the trial court did not err in failing to discharge appellant either pursuant to Rule 3.191(d)(3) or Rule 3.191(b)(1), Fla.Cr.R.P.
Appellant's contention that the imposition of the death penalty pursuant to Section 921.141, Florida Statutes, as punishment for a capital offense committed before December 8, 1972, is prohibited by Article I, Section 10, Constitution of Florida, prohibiting ex post facto laws is without merit. When appellant murdered Alexandra Todd on December 22, 1970, the crime he committed was a capital offense punishable by death. The sentencing of appellant to death by the trial court, sub judice, for the capital offense of murder in the first degree did not expose appellant to a greater penalty than that which originally could be imposed at the time of the commission of the offense. Accord, State ex rel. Manucy v. Wadsworth, 293 So.2d 345 (Fla. 1974), Lee v. State, 294 So.2d 305 (Fla. 1974).
Appellant raises several other points on appeal relative to the trial of his case, none of which we find to be meritorious so as to constitute reversible error. However, although having determined that appellant's conviction resulted from a fair trial, and should be sustained, we find that the sentence of death was not properly imposed by the trial court pursuant to the specified safeguards set out in Section 921.141, Florida Statutes. The jury was deprived of testimony highly relevant to their evaluation of mitigating circumstances  the testimony of the psychiatrists, who had testified during trial, relative to whether Miller acted under the influence *68 of extreme mental disturbance (Section 921.141(6)(b)) or whether his ability to conform his conduct to the requirements of the law was substantially impaired (Section 921.141(6)(f)).
As reflected by the record, at 5:48 P.M. on Saturday, February 23, 1974, the final day of trial, the jury retired to consider its verdict. It returned a verdict of guilty at 8:48 P.M. and thereafter the court recessed for dinner. Defense counsel moved the court to recess until Monday to allow subpoenas to be issued to witnesses available to testify regarding Miller's mental and emotional condition at the time of the crime, factors specifically mentioned as mitigating in Section 921.141 (6), Florida Statutes. Defense counsel indicated a desire to call the psychiatrists who had testified during the trial concerning Miller's ability to distinguish between right and wrong in order to question them on the very different issues of whether Miller acted under the influence of extreme mental disturbance (Section 921.141(6)(b)) or whether his ability to conform his conduct to the requirements of the law was substantially impaired (Section 921.141(6)(f)). The defense also indicated its intention to call a psychiatrist who had treated Miller for over two years between the time of his arrest and the trial. The trial judge refused to recess because he did not want to continue sequestration of the jury over the weekend. He also indicated that defense counsel could bring these psychiatric opinions to his attention after the jury rendered its advisory sentence. The sentencing portion of the trial was held that night, and the jury retired to consider its sentence at 11:28 P.M. It returned an advisory sentence of death at 11:39 P.M.
We have listened carefully to oral argument, examined and considered the record in light of the assignments of error and briefs filed, and we have also, pursuant to Rule 6.16(b), Florida Appellate Rules, reviewed the evidence to determine whether the interests of justice require a new trial, with the result that we find no reversible error is made to appear and the evidence in the record before us does not reveal that the ends of justice require that a new trial on the issue of guilt be awarded.
Accordingly, the judgment of guilty of murder in the first degree is affirmed. However, the cause is remanded to the trial court for purpose of conducting another sentencing hearing before a jury impaneled for that purpose at which hearing the psychiatric testimony improperly excluded may be considered. Cf. Messer v. State, 330 So.2d 137 (Fla. 1976), opinion filed March 31, 1976.
It is so ordered.
OVERTON, C.J., and ROBERTS, ADKINS, BOYD, ENGLAND, SUNDBERG and DREW (Retired), JJ., concur.