48 So.2d 836 (1950)
SULLIVAN
v.
LEATHERMAN.
Supreme Court of Florida, en Banc.
November 21, 1950.
*837 Jack Kehoe, Miami, for petitioner.
Richard W. Ervin, Atty. Gen., Reeves Bowen, Fred M. Burns, Murray Sams, Jr., and Phillip Goldman, Asst. Attys. Gen., for respondent.
TERRELL, Justice.
October 16, 1950, petitioner as sheriff of Dade County was indicted by the grand jury for neglect of duty and incompetency in office. He was arrested and brought into court by respondent as Elisor on authority of a capias. He was released on habeas corpus to which respondent filed his return. Petitioner then filed his answer and moves that he be discharged notwithstanding the return. Attached to the answer of petitioner is a copy of the indictment and a certified copy of the minutes of the Circuit Court of Dade County relating to the indictment.
In the petition for habeas corpus petitioner alleges that he should be discharged because (1) the indictment is void and wholly fails to charge petitioner with the commission of any crime known to the laws of Florida, and (2) the indictment is void in that it was not signed by the qualified States Attorney of Dade County or the acting States Attorney, but it was signed by the Special Counsel to the 1950 Spring Term Grand Jury for Dade County.
In response to the contention that the indictment fails to charge an offense against the laws of the State of Florida, respondent admits that none of its six counts charges a statutory crime, that count six charges no offense whatever, that counts two, three, four and five are weak and indefinite but he says that count one does not wholly fail to charge a common law offense, that is to say, the "common law misdemeanor of failing or neglecting to perform a duty imposed on him by law, to-wit: the duty of enforcing the gambling laws." In view of these admissions we direct our treatment primarily to count one.
To support his contention that count one does not wholly fail to state a common law offense, respondent proceeds on the theory that at common law the sheriff is guilty of a misdemeanor if he fails or neglects to perform his duty. Within the sheriff's catalog of duties he includes any acts which affect the morals of the community or shock its sense of decency, acts which obstruct the administration of justice or the performance of any service imposed on him by law, any act which tends directly or indirectly to injure the public in a way to require State intervention, failure to perform a ministerial duty, conduct on the part of the sheriff involving corruption or the abuse of any power entrusted to him for the benefit of the public. Respondent says that a common law indictment may be *838 predicated on anything comprehended in this invoice of duties and that count one is sufficient to do so.
In thus contending respondent does not take into account the fact that our State Constitution, Section 10, Declaration of Rights and Section 28, Article V, F.S.A., and the Federal Constitution, Fifth Amendment, require that any one tried for a capital crime or other felony must be first charged by presentment or indictment of a grand jury. Section 905.23, F.S.A., requires that indictments shall be found on concurrence of twelve members of the grand jury and shall be signed by the State Attorney or Acting State Attorney. So it follows that if the State relies on an indictment charging official misconduct or failure of official conduct in any respect, whether common law or statutory, the offense must be charged in direct and specific terms and that it was wilfully or corruptly done or omitted. Count one, in fact none of the counts meets the simple academic requirements of precise pleading, neither do they charge that petitioner wilfully or corruptly failed to perform any duty imposed on him by law or that he acted corruptly in the performance of any duty imposed on him. Ex parte Amos, 94 Fla. 1023, 114 So. 760.
So it necessarily follows that when one is relying on a common law indictment, and that is the most that is relied on here, it must meet constitutional and statutory requirements. The charge must be made in such positive and direct terms as will put the defendant on notice of what he is charged with and enable him to prepare his defense. In this we do not overlook the requirement that when the statute intercepts the common law, it must be strictly construed, if it is supplementary to the common law it does not displace it any further than is clearly necessary. When all of these safeguards to fair and impartial trial are interposed, we doubt if there is such a thing as a common law indictment in the loose sense that respondent would have it. It would at least be a rare concept. Even if it involved nothing more than a misdemeanor the safeguards to fair and impartial trial must be observed.
Summarized count one charges that in 1949 and 1950 petitioner was guilty of neglect of duty in office in that he knowingly permitted the gambling laws of the State of Florida to be violated in Dade County in an open and notorious manner, on a wide scale, yet he refused or neglected to take any effective steps to prevent said violations. Respondent admits that this count is fatal if tested by State or Federal law, but he contends that it is sufficient as a common law indictment for misdemeanor. This notwithstanding it measures up to none of the dimensions for a good indictment prescribed in the preceding paragraphs. Neither could the best lawyer in Florida define from its content what duty of the sheriff was being corruptly performed. Respondent also admits that none of the other counts is as strong as count one and he says some of them fail to charge anything. After so much admission it would seem that respondent is now doing little more than officiating at the accouchement of a still born bastard indictment hoping to spank life into it. He admits that it was begotten by an interloper and that its life hangs by a mighty slender thread, but he says that an omnipotent legislature has legitimatized the bastard and remitted the sin of the putative father. He admonishes this court to pronounce its blessing and give it the brush off. To recognize such an indictment would amount to an abandonment of every safeguard that the constitution and the statute has placed about fair and impartial trial and permit one charged with crime to be tried on charges predicated on nothing more than idle rumor, flying saucers and current gossip. Our constitution does not permit criminal justice to be so administered.
Then there is an historical aspect to these constitutional and statutory safeguards that we dare not overlook. The grand jury had its origin early in the history of English law. When first conceived it was the accuser and the trier of public offenders. At the time this country was *839 settled its duties were delimited and it was strictly an informing or accusing body and as previously stated, the Federal and each State Constitution made its accusation a prerequisite to fair trial, the reason being that in England when conflicts arose in defining the powers of the King and the rights of his subjects, the grand jury acted as a stopgap to prevent persecution of the subject by the stooges of the King. It was generally regarded as refuge against cooked up, unfounded or unfair prosecutions in the name of the crown. Conflicts between the citizen and the government have been rare in this country but the grand jury was integrated into our system of law for purposes not materially different from those for which it was employed in England and it would be idle to contend that without it or even with it in the hand of a designing prosecutor, it could not be used to avenge personal political and other hatreds without number. So it necessarily follows that when the Founding Fathers made indictments essential to prosecution, they had no scatter gun pattern in mind, they shot with a rifle directed to the bullseye. A good indictment must still approach that pattern. It cannot be grounded on street rumor, common gossip or what "they say".
In response to the second assault the indictment is void because it was not signed by the State Attorney or the acting State Attorney, but was signed by the "special counsel to the 1950 Spring Term Grand Jury in and for Dade County"  respondent contends that this assault must fail because the constitution does not require that an indictment be signed by the prosecuting attorney or any one in his behalf, but if it did so require, he says Chapter 25765, Special Acts of 1949, implicitly contemplates that special counsel authorized and employed by the grand jury of Dade County may sign indictments resulting from investigations that he is called on to make.
We do not think there is any merit to this contention. The most that Chapter 25765 does is to authorize the grand jury to use funds appropriated by it to employ special investigators and special legal counsel to investigate crime and enforce the criminal laws. Anything such special investigator or special legal counsel does, is done as an aid to the State Attorney for the Circuit, the prosecuting attorney of the County or the grand jury. There is not a word in the title or the body of Chapter 25765 that indicates an intent to relieve the State Attorney of his duty as advisor and director to the grand jury or relieve him of his responsibility for seeing that the criminal laws are fairly enforced. The State Attorney is elected by the people for that purpose and he is directly responsible to them for it. To uphold respondent's contention would be tantamount to creating a second law enforcement agency out of the grand jury and its Special Counsel which we find no warrant for whatever. It would in effect vest sovereign power in private citizens with carte blanche to go out and prosecute whom they please. We can think of nothing more demoralizing to the administration of the criminal law.
We have heretofore pointed out that Section 905.23, F.S.A., requires that all indictments should be signed by the State Attorney or the acting State Attorney. It would hardly be possible to write this command in more direct and positive terms. Then Section 27.18, F.S.A., provides that when the State's business requires, the State Attorney with the Court's consent, may call other counsel to his aid, but such assistants are prohibited from performing any sovereign powers such as signing indictments or administering oaths. There is not a word in Chapter 25765 indicating a purpose to repeal either of these acts or to substitute any counsel called to investigate for the grand jury in place of the State Attorney. Both the Constitution and the statute contemplate that the State Attorney or one acting for him sign all indictments. His signature is essential to give it legal status and in reality it does not become an indictment till he signs it. Absent such signature, it is no more than a letter without the signature of the writer, a promissory note without the signature of the maker or a contract without the signature of the contracting parties.
*840 It is therefore our view that the indictment fails to charge petitioner with the commission of any crime against the laws of Florida. It is also void and ineffective because it was not signed by the State Attorney as required by law.
The order of remand is reversed and the petitioner is discharged.
ADAMS, C.J., and CHAPMAN and HOBSON, JJ., concur.
THOMAS, J., agrees in part.
ROBERTS and SEBRING, JJ., not participating.
THOMAS, Justice.
I agree to the conclusion, and to that part of the opinion dealing with the invalidity of the indictment due to absence of the signature of the State Attorney.